Scott's Ex'r v. Scott.

---

CASE 52—PETITION EQUITY—MARCH 18.

## Scotts' Ex'r v. Scott.

APPEAL FROM JESSAMINE CIRCUIT COURT.

1. ACTION TO QUIET TITLE.—The possession of one of several joint owners of land is the possession of all, and where one is thus in possession by his co-tenant, he may maintain an action to quiet his title.

2. As IT IS TO BE PRESUMED THAT AN OFFICER HAS DONE HIS DUTY, it must be presumed that a sheriff who has made a sale under an execu-

tion did not do so without a levy, or by virtue of a levy made when the execution was not alive, and, therefore, it rests with the party denying the validity of the sale to show such irregularity.

In this case an execution under which a sale of land has been made shows by an indorsement upon it when it reached the sheriff's hands, but does not *expressly* say when it was levied. *Held*—That the indorsements, when read in the order in which the events occurred, must be regarded as substantially stating that the execution was levied the day it reached the officer's hands.

3. A CONVEYANCE WHICH IS ACTUALLY FRAUDULENT MAY BE DISREGARDED BY AN EXECUTION CREDITOR of the grantor, who may, without attacking the conveyance, levy his execution upon the land as that of the debtor, and sell it for his debt; and the title thus acquired is not a mere equity or right to control the legal title and have the fraudulent transfer vacated by an appropriate proceeding, but it is the legal title itself, against which the fraudulent transfer is no transfer at all.

4. LIS PENDENS.—A suit of a creditor to set aside a conveyance as fraudulent, which was not brought until after an execution of another creditor had been levied upon the land as that of the grantor, did not operate as a *lis pendens* as to the execution, and the purchaser at the execution sale, subsequently made, acquired a perfect title which was not affected by a subsequent decree and sale thereunder in the suit to set aside the conveyance as fraudulent.

5. MERE INADEQUACY OF PRICE is not ground upon which to set aside an execution sale, and therefore notice of the inadequacy of price does not affect one who subsequently purchases from the execution purchaser.

WM. LINDSAY FOR APPELLANT.

1. As the fact of possession in the appellee was expressly denied and not proved, he was not entitled to a judgment quieting his title.

2. As the title to the land in controversy was in another than the execution defendant when levied on under the execution under which appellee claims, appellee must aver and prove that the conveyance under which the title was held was executed by the execution defendant in fraud of his rights as a pre-existing creditor. And he cannot establish the fact that the conveyance was fraudulent by the judgment in favor of appellant.

3. Appellee, claiming under an execution purchase, must show that the execution was levied while alive and in full force, which he has failed to do.

4. The inadequacy of price is so great as that when the purchaser comes into a court of equity, asking relief upon the title secured by the purchase, the burden is upon him to explain the circumstances attend-

Scott's Ex'r v. Scott.

ing his purchase, and to account for the smallness of the price paid upon an hypothesis consistent with fairness; and failing to make such an explanation, he should be compelled to accept the amount due him under the judgment and execution sale, and permit the sale made at the instance of the appellant in her equity action to stand, she to receive the sums bid after the satisfaction of appellee's demands. (Blight's Heirs v. Tobin, &c., 7 Mon., 616; Hart v. Blight, 8 Mon., 273; Pomeroy's Eq. Jur., sec. 927; White v. Cates, 7 Dana, 358; Morgan v. Stuart, Assee., MS. Op., Jan. 26, 1886.)

In this case the sum bid was less than one-fourteenth of the appraised value of the land, and the reasons for setting the sale aside, independent of the inadequacy, are as strong as those which operated upon this court in the case of Morgan v. Stuart.

5. The appellee does not stand in a more favorable attitude than that of his vendor. He can not be regarded as a purchaser *without* notice of the existence of the facts which would have entitled appellant to relief against his vendor. Having notice of circumstances sufficient to put him upon inquiry, he must be treated as having notice of the facts which he would have ascertained if inquiry had been made. (Pomeroy's Eq. Jur., vol. 2, secs. 600, 626 and 627; Hoppin v. Doty, 25 Wis., 573; Johnson v. Gwathmey, 4 Litt., 319.)

J. S. BRONAUGH ON SAME SIDE.

1. As appellee claims under an execution purchase, he must show that the execution was levied while in full force. (Freeman on Executions, sec. 340.)

2. Appellee must show title in the execution defendant while the execution was in force, which he has failed to do. (Tillinghast's Adams on Ejectment, 301; Arnold *et al.* v. Gow *et al.*, 1 Rawle, 223; Banks v. Blight's Heirs, 6 Mon., 205.)

3. Appellee can not rely upon the judgment in favor of appellant declaring the conveyances by the execution defendant fraudulent, appellee not being a party to the action in which that judgment was rendered. (Freeman on Judgments, secs. 154 and 159; Doyle v. Armstrong, 2 Duv., 534; Alexander, &c., v. Slavens, &c., 7 B. M., 356; Memphis & St. Louis Packet Co. v. Grey, 9 Bush, 148; Winston v. Starke, 12 Gratt., 137.)

4. When sale is made under execution of property fraudulently conveyed by the execution defendant, the purchaser, in order to obtain the possession, must allege and prove the fraud. (Freeman on Executions, section 335, and authorities there cited; Worland v. Outten, 8 Dana, 478.)

BEN. P. CAMPBELL FOR APPELLEE.

Brief not in record.

JUDGE HOLT DELIVERED THE OPINION OF THE COURT.

John D. Scott was the owner of an undivided one-third of three separate tracts of land. He conveyed his interest in two of them to one Rogers, on March 17, 1878; and his interest in the remaining one having been sold under two executions, one in favor of one Campbell, and the other in the name of Robert J. Scott, and purchased by the latter at the amount of the two debts, the sheriff on March 14, 1878, conveyed it to him.

On June 18, 1878, an execution in favor of R. A. Buckner and against John D. Scott issued upon a judgment rendered upon a debt which was created prior to the conveyances to Rogers and Robert J. Scott. It came to the sheriff's hands on the following day, and in this controversy it is claimed upon the one side that it was levied upon that day upon the interest of the execution debtor in the three tracts of land; while, upon the other hand, it is urged, that it does not appear that it was levied while alive, or before its return day, which was the fourth Monday in July, 1878. The interest of the debtor in the larger and also in the smaller tract was sold under it on August 29, 1878, and purchased by the appellant, Hannah Scott, at a little over eight hundred dollars; but she failing to give bond for the purchase money, the execution was returned unsatisfied. No reason is assigned for this failure upon her part. A *ven. ex.* issued on October 21, 1878, and under it the debtor's interest in the three tracts was sold on December 16, 1878, and purchased by the plaintiff in the execution, R. A. Buckner, at the price of six hundred and thirty-eight dollars and forty-three cents. The sheriff

conveyed it to him on September 17, 1880; and he on August 22, 1881, and for seven hundred and forty-one dollars, conveyed it to the appellee, Edward S. Scott.

Prior to October 21, 1878, Thomas B. Scott had obtained a judgment for a considerable sum against John D. Scott, upon which an execution had issued and been returned "no property." The creditor having died, his executrix, the appellant, Hannah Scott, instituted an action on the day last named against John D. Scott, Robert J. Scott and Charles W. Rogers, seeking to have the conveyances to them declared fraudulent, and the property embraced by their deeds subjected to the payment of the judgment in favor of her testator. She obtained a judgment on August 18, 1881, declaring them void as to the creditors of John D. Scott, and subjecting the landed interests named in them to sale for the payment of her debt, save that Robert J. Scott was allowed a lien upon the interest he had purchased at sheriff's sale for the Campbell execution debt paid by him, and for a portion of his execution debt found by the court to be just, because, although the debtor, John D. Scott, had procured the Campbell and Robert J. Scott judgments to be rendered, yet the plaintiffs in them were not shown to have participated in the fraudulent purpose.

As the suit by Thomas B. Scott's executrix was not brought until after the issual and levy of the Buckner execution, it did not operate as a *lis pendens* as to it. Under her judgment the lands were sold, the interest of John D. Scott in two of the tracts being purchased by Robert S. Perry. Neither Buckner nor his vendee, Edward S. Scott, were parties to her suit.

The present action was brought by the latter to quiet his title, and for a division of the land. Hannah Scott, executrix of Thos. B. Scott, Robert J. Scott, Robert S. Perry, Charles W. Rogers, and the other joint owners of the land, were made defendants.

It is urged, first, that the appellee has never had the actual possession of the land ; and that this action is in the nature of a bill *quia timet*, and can not, therefore, be maintained. If, however, his vendor, R. A. Buckner, acquired title by his execution sale, then as it has by purchase vested in the appellee, the possession of the other joint owners inured to his benefit, and the possession of one was that of all. It is inconvenient, if not often impossible, for several owners, who have the right to occupy the same tract of land, to do so at the same time ; the actual possession of one, therefore, will not be considered adverse to his co-owners, but as the common possession of all. They are tenants in common, all being in law in the actual possession. Their common ownership makes this rule necessary.

Aside from this, however, this action not only seeks to quiet the appellee's title, but to obtain a division of the land.

It is next said, that as the appellee is the plaintiff, and claiming title through an execution sale, that the *onus* is upon him to show the regularity of every step necessary to pass the title of the execution defendant ; and that the record in this instance fails to show that the execution was levied while it was alive. Upon the other hand, it is urged that even if this were so, yet the law presumes that the officer did his duty and acted correctly ; that it must be presumed that he would not

have made a sale without a levy, or by virtue of one made when the execution was not alive; and that, therefore, it rests with the party denying the validity of the sale to show such irregularity.

It is unnecessary to determine this question. It is the policy of the law to uphold judicial sales. If the return as entered by the officer be of doubtful import, it should be construed so as to uphold his action.

The entry of the levy upon the execution in this instance does not expressly say *when* it was levied; but the entry as to when it reached his hands, although copied in the record after his indorsement of the levy, should be read first. It shows that it came to his hands the day after it was issued; and then he indorses upon it: "Levied this execution," etc. These indorsements, when read in the order in which the events occurred, and fairly construed, must, in our opinion, be regarded as substantially stating that the execution was levied the day it reached the officer's hands.

The objection mainly urged, however, to defeat the appellee is, that when the Buckner execution was levied the legal title to the land was vested in Rogers and Robert J. Scott, by virtue of the deeds to them; and not being in John D. Scott, it could not be levied on as his property.

If the levy and sale under this execution were valid, then manifestly the title acquired by Buckner related back and took effect as of the date of the levy; and when it was made the appellant had no suit pending to operate as notice to the execution creditor. The conveyances to Rogers and Robert J. Scott were attacked as actually fraudulent, and so adjudged in the suit

brought by Thomas B. Scott's executrix. It is true, that neither R. A. Buckner or the appellee were parties to it; and it is now urged, that, as they were not bound by it, they can not, therefore, avail themselves of the result of it; and that the appellee must avoid those deeds by a direct attack upon them.

Waiving the question whether he has not in effect done so in this action, yet if the deed of a debtor to his land be actually fraudulent, then his execution creditor may disregard it, and, without attacking it, levy his execution upon and sell it for his debt.

He has a right to treat it as a nullity. This is so, because the law regards the title as still in the debtor, and will not consider it as having passed from him by means of a fraud. It is suggested, however, that while Buckner had the right to have his execution levied upon the land, and to sell it in disregard of the Rogers and Robert J. Scott deeds, that yet having done so, he himself, or his vendee, must then by an action attack them as fraudulent, and can not rely upon the fact that they were so adjudged in a suit to which he was not a party.

As against the fraudulent transferee, however, the creditor may seize the property as that of the fraudulent debtor; and the title that may be thus acquired is not a mere equity or right to control the legal title, and have the fraudulent sale vacated by an appropriate proceeding, but it is the legal title itself against which the fraudulent transfer is no transfer at all. The legal title remains in the debtor, as to his creditors, notwithstanding the fraudulent transfer, and the possession of the fraudulent transferee may properly be re-

garded as that of the debtor. (McConnell v. Brown,. &c., 5 Monroe, 484.)

Both the appellee and Scott's executrix were creditors of John D. Scott, and in the suit by her these conveyances were decided to be fraudulent as to his creditors. The parties to this suit, who are contesting the appellee's right, were either parties or privies to that action. The executrix was the plaintiff in it; Robert J. Scott was a defendant, and he and Perry were the purchasers at the sale made under the decree obtained in it. Indeed, the only party now complaining by this appeal is the very one who obtained that judgment.

The deeds, being fraudulent, affected neither the title or the possession. The grantees under them did not enter into the actual possession of the land; and the. appellant, having procured a decree declaring them fraudulent as to the creditors of John D. Scott, is not in a position to deny the appellee's right to relief bebause they have not been set aside for a like reason,. at his instance, in an independent proceeding.

The land may have been purchased by Buckner at a sacrifice. Mere inadequacy of price does not, however, authorize us to set aside the sale. It is our duty to ascertain the law, and then declare its mandate, without regard to any seeming hardship. There is no intimation of any fraud upon his part.

The levy of his execution antedated any *lis pendens* of the appellant, and his title relates back to it; and the judgment below must be, and is affirmed.

To a petition for rehearing filed by counsel for appel-

lant, Judge HOLT delivered the following response of the court:

The case of White, &c., v. Cates, &c., 7 Dana, 357, is relied upon to support the appellant's claim that the deed from Buckner to the appellee should be set aside, and he allowed merely a lien upon the land for his purchase money and interest.

There are many points of difference between that case and this one. There the execution creditor had purchased the land of his debtor for a very small portion of his judgment. He was not in possession of it. The debtor had previously conveyed it to a third party. The execution purchaser sued in equity for the possession, and to compel the fraudulent vendee to release in his favor. The court said that it was not absolutely certain that the prior conveyance was fraudulent; that the complainant had a remedy at law, but had chosen to resort to equity; and it would, therefore, in a doubtful case of fraud, and where the land had been obtained by the execution creditor at a ruinous sacrifice, leave him to his legal remedy by dismissing the action, unless, as the price of obtaining the specific relief asked, he would consent to a re-sale of the land.

Here the appellee does not sue to enforce any contract or to divest any possession; but to divide the land of which he is already in possession, and quiet his title and free it of a cloud put upon it through the instrumentality of the appellant subsequent to the creation of Buckner's right. To do this he must go into equity. He is a purchaser for value. It is urged, however, that he purchased from Buckner at such a grossly inadequate price as to put him upon inquiry; and that he is

therefore affected by any infirmity in Buckner's title. Even if this were so, yet, when we get back to the latter, there is no charge of fraud, and if there were, there is no evidence whatever to support it. He purchased at a regularly conducted execution sale, and no fraud or wrong is imputed to him. The only objection urged is that the price paid was inadequate.

In cases where there has been a ruinous sacrifice at such sales, courts of equity will lay hold of small circumstances, that evidence fraud but slightly, to set them aside. But here there are none. As there was no fraud or wrong upon Buckner's part, there is of course none to affect the appellee.

Notice of inadequacy of price in the Buckner purchase cannot affect the appellee. (Waller v. Tate, 4 B. M., 534; Blight's Heirs v. Tobin, 7 Mon., 618.) It is not *per se* ground upon which to annul a sale.

Public policy dictates that confidence should be had in judicial sales. The appellee being a purchaser for value had a right to rely upon the sheriff's deed to Buckner; and the record fails to disclose a single circumstance upon which to afford the relief asked in the petition for a rehearing, save that the land did not bring its value. It is not even shown that the appellee is related to the debtor, John D. Scott. It is true that one asking equity must do equity; but it does not appear that either the appellee or his vendor, Buckner, have so acted, or that the appellee occupies such a position, as to prevent him in good conscience from asking the relief sought by him.

Indeed, the appellant does not appear in such a favorable light as to entitle her to peculiar equitable consid-

eration. She knew of Buckner's execution lien, and yet she did not make him a party to her suit to annul the fraudulent conveyances made by their common debtor.

After the purchase at execution sale by Buckner, she could have seized under execution the equity of redemption in the land for her debt Instead of doing so, it is probable, from the circumstances, that she was expecting through her equity suit to consume the entire property, and leave Buckner instead of herself an unpaid creditor.

The petition for a rehearing is overruled.