CASE 72—PETITION EQUITY—DECEMBER 14.

## Fuller, &c., v. Pinson.

### APPEAL FROM PIKE CIRCUIT COURT.

FRAUDULENT CONVEYANCE—EXECUTION SALE.—Where land which has been conveyed by a debtor to another with intent to defraud his creditors is levied upon and sold under execution as that of the debtor, the purchaser at the execution sale acquires the legal title and is entitled to recover the possession under his purchase provided he can show that the conveyance by the debtor was in fact fraudulent as to creditors.

STEWART & STEWART FOR APPELLANTS.

In the absence of judgment and return of "no property found" or an attachment, the court had no jurisdiction to declare fraudulent the deed from Price to Mrs. Fuller. (Vance v. Campbell, 3 Ky. Law Rep., 448; Martz v. Pfeifer, 4 Ky. Law Rep., 592; Kyle v. O'Neil, 10 Ky. Law Rep., 709; Napper v. Yeager, 2 Ky. Law Rep., 260.)

AUXIER & YORK FOR APPELLEE.

1. The appellee had the right to treat the conveyance as fraudulent and void, and to have the land levied on and sold under execution as that of the debtor.
2. This court will not disturb the finding of the chancellor unless it is flagrantly erroneous. (Daniel v. McHenry, 4 Bush, 279.)

JUDGE GRACE DELIVERED THE OPINION OF THE COURT.

The main question presented by this appeal is whether a creditor may lawfully levy on and sell real estate, as that of his debtor, where the debtor, although he has recently theretofore held the legal title, has, prior to the time of the levy and sale, conveyed the land to another; and dependent on this question, the further one, whether the purchaser under execution sale, having regularly obtained his deed, may file suit in equity against the vendee of the original debtor for the land, and have the deed by which the debtor conveyed it to his vendee set aside, all upon the ground that such sale was fraudulent, and made with the intent and purpose to cheat, hinder and delay the creditor in making his debt by execution.

Under the facts of this record, it appears that at the February term, 1889, of the Pike Circuit Court, the Commonwealth obtained a judgment against W. J. Price for the sum of $100 as security on some bonds taken to the Commonwealth; that on this judgment execution issued on the 1st day of March, 1889, and on the 12th day of March same was, by the sheriff of Pike county, levied on the tract of land of about sixty acres as the property of Price. This land was sold on the 25th day of March, 1889, and appellee became the purchaser, bidding the debt, interest and cost in the execution. It further appears that this land had been previously owned by legal title by the defendant, Wm. J. Price, but that on the day of the sale a deed of conveyance was filed, after being proven by one of the subscribing witnesses, of date February 22, 1889; made by Wm. J. Price, the former owner, to Mrs. Elizabeth Fuller, the mother of Price. This deed recited a consideration of $100 cash in hand paid. Notice of the filing of this deed and of the claim of title by Mrs. Fuller

was duly made at the time of the sale under which Pinson purchased, and this is the deed that Pinson now attacks as fraudulent.

Without reciting the evidence introduced on the trial of this issue by the chancellor, it is sufficient to say that the weight of same tended strongly to sustain the charges of fraud as made. It was clearly shown by one of the subscribing witnesses that no money was paid for this land at the time of making this deed as claimed; that the purchaser, Mrs. Fuller, was an old and somewhat feeble lady; that both she and her husband, Hawkins Fuller, were very poor peo ple, and in the opinion of some of their near neighbors did not then have, if indeed they ever of recent years had, as much money as $100.

It was also testified to that at the time of making this deed something was said about dating it back so as to antedate the execution. In addition the conduct of the defendant, Wm. J. Price, was inconsistent with any such *bona fide* sale to his mother before the issual of the execution against him. It appears that Price was an unmarried man, and that he made his home on this same land with his mother and stepfather, both prior to and since the sale; so that the finding of the chancellor that this was a fraudulent sale may be safely said to be sustained by the evidence.

As early as 1827, in the case of McConnell v. Brown and others, 5 Mon., 484, this court held that "deeds which are made with intent to defraud creditors are, by the act against fraudulent conveyances, expressly declared void as against creditors; so that as respects the proceedings by the creditors to collect their demands the possession of the fraudulent vendee may properly be said to be the possession of the vendor, and the land, therefore, according to our construc-

tion of the act, liable to be taken and sold by execution against the vendor."

This view of the law appears to have been acted on from time to time since that decision. It is supported by the case of Daniel v. McHenry, 4 Bush, 279. And again distinctly in the case of Scott's ex'or v. Scott, 85 Ky., 385.

In this latter case the court said: "Waiving the question as to whether the deed said to be fraudulent was attacked by this suit, yet if the deed of a debtor to his land be actually fraudulent, then his execution creditor may disregard it, levy his execution upon it and sell it for his debt. He has a right to treat it as a nullity. This is so because the law regards the title as still in the debtor, and will not consider it as having passed from him by a fraud. * * As against the fraudulent transferee, however, the creditor may seize the property as that of the fraudulent debtor, and the title that is then acquired is not a mere equity or right to control the legal title and have the fraudulent sale vacated by an appropriate proceeding, *but it is the legal title itself*, against which the fraudulent transfer is no transfer at all. The legal title remains in the debtor as to his creditors, notwithstanding the fraudulent transfer, and the possession of the fraudulent transferee may properly be regarded as that of the debtor."

The court, in further speaking of that case, said that "while the creditor may have purchased the land at a sacrifice, yet mere inadequacy of price, however, will not authorize us to set the sale aside. It is our duty to ascertain the law, and then declare its mandate without regard to any seeming hardship."

In no reported case do we find that this mode of procedure has been declared illegal by this court. Of course the purchaser takes the place, and is entitled to all the rights, of the

original creditor, and to the benefit of his purchase under his execution, provided he can, in a proceeding under his purchase, show that the pretended sale which purported to pass the title out of the debtor to his vendee was, in fact, fraudulent. If so, he will be entitled to the benefit of his purchase, and to perfect it by a suit in ejectment as well as by having the deed set aside as fraudulent. The purchaser, in such a case, takes his chances, and if the prior conveyance is good then he gets nothing by his purchase.

Quite a number of cases are cited by appellants, wherein the court says in substance that before a creditor can ask the aid of a court of equity to set aside any conveyance of his debtor as fraudulent he must first obtain his judgment at law, and a return of no property found, or he must, on the filing of his petition, accompany same by such statements as will authorize an attachment against the property of his debtor. Often these are the only states of case that are said to authorize the appeal to the chancellor. But all such cases should be read and interpreted with reference to the facts then before the court for adjudication, and such declarations of this court will generally, if not always, be found to have been made in contradistinction to the right of the creditor to thus seek to set aside a fraudulent sale before he has obtained his judgment and return of no property found.

Not one of the cases cited by appellants do we find to deny the right of an execution creditor to proceed to sell the property of his debtor, though fraudulently conveyed before the issual or levy of the execution.

The judgment of the court below being in accordance with these views must be affirmed.