## Hall, et al. v. Casebolt, et al.

(Decided October 13, 1916.)

### Appeal from Pike Circuit Court.

1. Fraudulent Conveyances—Evidence—Sufficiency.—In an action involving the validity of a conveyance made by a father to his children through their grandfather as intermediary, evidence examined and held sufficient to show that the conveyance was without consideration and was made with a fraudulent intent to defeat the grantor's creditors.

2. Fraudulent Conveyances—Rights of Creditor—Execution.—A debtor having conveyed away his land for the purpose of defrauding his creditors, an execution creditor may disregard the deed, and, without waiting to set it aside, may levy his execution upon and sell the land for his debt; but if the conveyance was made by another and the debtor never had title to the property and the conveyance is only fraudulent to the extent of a small portion of the purchase price paid by the debtor, the land cannot be sold under the creditor's execution. In such a case, the land can only be subjected to the creditor's claim in a proceeding to have the conveyance declared to be fraudulent.

3. Fraudulent Conveyances—Homestead.—A conveyance of a homestead is not fraudulent, since it is not subject to the grantor's debts.

4. Homestead—Occupancy.—One living with his father upon land in which he has no interest is not entitled to a homestead in a tract of land which he owned and cultivated but never occupied.

J. S. CLINE for appellants.

ROSCOE VANOVER and R. H. COOPER for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming in Part and Reversing in Part.

In the year 1912, Joe Hall and Aus Holbrook, who were engaged in the grocery and general merchandise business, furnished to John H. Casebolt and wife groceries and other necessaries of the value of $90.49. Suit was brought on the account and judgment was rendered in favor of Hall and his partner on February 2nd, 1915. Execution was issued thereon and levied on two tracts of land, the title to which was in Willie J. Casebolt and Clara B. Casebolt, children of John H. Casebolt. After due advertisement the two tracts of land were sold by the sheriff and Hall and Holbrook became the purchasers for the amount of their debt, interest and cost of sale.

This action was brought by Willie J. Casebolt and Clara B. Casebolt, and John H. Casebolt, their father, against Joe Hall, Aus Holbrook and the sheriff of Pike County to quiet the title of Willie J. Casebolt and Clara B. Casebolt to the two tracts in question and to have the levy and sale thereof set aside. The basis of the action is that the title to the two tracts was in Willie J. Casebolt and Clara B. Casebolt and was not subject to a sale for the debt of John H. Casebolt. The petition further pleads that at the time of the wrongful acts of the defendants the said John H. Casebolt

was an actual bona fide housekeeper with a family resident in the State of Kentucky, and was using the second tract of land as a homestead, which was of less value than $1,000.00. After denying the allegations of the petition, the defendants pleaded in substance that the debt for which the land was sold was created prior to the time that John H. Casebolt acquired title to the tracts of land and prior to the time that he executed, or procured to be executed, the deeds to his two children, Willie J. Casebolt and Clara B. Casebolt; that the conveyances to his two children were voluntary and without consideration and were made, or procured to be made, by John H. Casebolt with the fraudulent intent to cheat, hinder and delay his creditors, including the defendants. The chancellor granted the relief prayed for and the defendants appeal.

The record discloses the following facts: One of the tracts of land was conveyed to Willie J. Casebolt and Clara B. Casebolt by Hiram Casebolt, Sr., and wife, the parents of John H. Casebolt. Whether or not John H. Casebolt ever had any interest in this land does not clearly appear. The title to the second tract of land was in John H. Casebolt. He said that he acquired title in about July, 1912. In the month of April, 1913, John H. Casebolt conveyed this tract to his father. On July 18th, 1913, his father and mother conveyed it to Willie J. Casebolt and Clara B. Casebolt for the recited consideration of $500.00 cash. John H. Casebolt testifies that when he conveyed the land to his father he received the consideration therefor. He further claims that his children paid his father for the land when they purchased it. His father does not testify in the case. John H. Casebolt testifies that the money paid by his children was the money which he had given to them at various times. He says that he does not know where his father got the $500.00 to pay him for the land; couldn't say whether his father got any of the $500.00 that belonged to the children and used that in paying him for the land. He further claims that he used the money which his father paid him for the land for general family expenses and to pay the cost of litigation with his wife. A brief statement of the testimony is sufficient to show that no satisfactory explanation of how his children came into possession of a sum of money sufficient to pay the purchase price is made. It is by

no means probable that they had accumulated that much money from sums which their father had given to them at various times. Considering the fact that the title to this particular tract was in John H. Casebolt, that he conveyed it to his father and that a few weeks later his father conveyed it to John H. Casebolt's children, coupled with the improbability of the children having on hand the amount of the purchase price, we conclude that the conveyance of the tract in question to the children was purely voluntary and without consideration, and that John H. Casebolt conveyed the land to his father and had his father convey it to the plaintiffs for the fraudulent purpose of defeating his creditors.

In granting the relief prayed for by the plaintiffs, the chancellor evidently proceeded upon the theory that as the legal title to the two tracts of land was in the infant plaintiffs the lands were not subject to sale under the execution. This is doubtless true as to the first tract, since it does not appear that John H. Casebolt ever had title to the land, or that he paid any portion of the purchase price except the sum of $50.00. Under the statute, every gift, conveyance, assignment, transfer, or charge made by a debtor, of or upon any of his estate, without valuable consideration therefor, is void as to his then existing liabilities. Kentucky Statutes, section 1907. Here the legal title to the first tract was never in John H. Casebolt. The conveyance by his father to the children could only be regarded as voluntary to the extent of $50.00, the amount of the purchase price paid by John H. Casebolt. In other words, the legal title vested in his children under the conveyance from their grandfather, subject only to the claim of John H. Casebolt's creditors to the extent of $50.00. In order, therefore, to subject the property to this extent, it would be necessary to institute a proceeding to have the conveyance declared to be fraudulent; otherwise no portion of the property could be subjected to defendant's claim. In such a case, an execution could not be levied thereon on the theory that the title thereto never passed.

However, when we come to consider the second tract of land a different state of facts is presented. The title thereto was in John H. Casebolt. He conveyed the land to his father and his father then conveyed it to the children. These conveyances were without consideration and were, therefore, void as to defendants' debt, which

was created long prior thereto. In such a case the statute declares the conveyances to be void. No title whatever passes to the grantee but remains in the fraudulent debtor, and, under the repeated decisions of this court, the property may be sold under an execution against the grantor and the fraudulent conveyances ignored. Lillard v. McGee, 4 Bibb 165; Scott's Executor v. Scott, 85 Ky. 385; Fuller v. Pinson, 98 Ky. 441. It follows that the judgment below was correct as to the first tract but erroneous as to the second tract, unless, as a matter of fact, John H. Casebolt was entitled to a homestead therein, for it is well settled that the conveyance of a homestead cannot be fraudulent, since it is not subject to the grantor's debts. Dugan v. Massey, etc., 6 Bush 81; Lockett's Admx. v. James, Admr. etc., 8 Bush, 28; Kuevan, etc., v. Specker, etc., 11 Bush 1; Snapp, etc., v. Snapp, etc., 87 Ky. 554.

The next question to be decided, therefore, is whether or not John H. Casebolt was entitled to a homestead in the second tract. On this question John H. Casebolt, who was the only witness, testified in substance that he had a family and kept house sometimes and sometimes boarded while teaching school; that he had been a housekeeper with a family something like eighteen to twenty years and had three children; that the land levied on was worth about $500.00, and at the time of the levy and sale he was staying at his father's and was raising a crop on the tract that was sold.

While it has been ruled that a tract of land adjoining or a short distance from the debtor's home place, and used and cultivated by the debtor in connection with his home place, is included within his homestead where it, together with his other land, does not exceed $1,000.00 in value—Farmer, et al., v. Hampton, et al., 154 Ky. 83— we are unable to perceive upon what theory John H. Casebolt can be adjudged a homestead in the second tract in question. He merely says that he was living with his father and cultivated the tract in question. He does not show that he had any interest whatever in his father's land, or that his father's land could, in any sense, be regarded as his homestead. Not being in occupancy of his father's land as a homestead and not being in occupancy of the tract in controversy, we conclude that the mere cultivation of the tract in controversy was not a sufficient use of it, in connection with

an actual homestead, to entitle him to a homestead therein. That being true, it follows that this tract was subject to sale under the execution in favor of defendants.

From the foregoing it follows that that portion of the judgment setting aside the execution sale of the first tract of land was proper, while that portion of the judgment setting aside the execution sale of the second tract of land was erroneous.

That portion of the judgment setting aside the execution sale of the first tract of land is affirmed. That portion of the judgment setting aside the execution sale of the second tract of land is reversed and cause remanded, with directions to enter judgment in conformity with this opinion.