**Juana TEEGARDEN et al., Appellants,**

v.

**Harry L. McKENZIE, Appellee.**

Court of Appeals of Kentucky.

Sept. 19, 1969.

Cassie J. Allen, Prestonsburg, M. O. Wheeler, Paintsville, for appellants.

J. K. Wells, Paintsville, for appellee.

DAVIS, Commissioner.

The present appeal presents another facet of the litigation dealt with in McKenzie v. Commonwealth, Ky., 373 S.W.2d 595, and challenges the judgment of the trial court quieting title of the appellee in certain real estate once owned by Hurst W. Pack. Before stating the precise issues on appeal, it will be necessary to relate the attendant factual background.

In October 1940, Willard Hicks obtained a judgment against Hurst W. Pack in the Floyd Circuit Court for recovery of $3,000. On January 6, 1954, Execution No. 12667 was issued pursuant to that judgment and directed to the sheriff of Johnson County, commanding him to levy upon any property of Hurst W. Pack within his bailiwick. As noted in McKenzie v. Commonwealth, Ky., 373 S.W.2d 595, 597, the present appellee McKenzie, who was then the sheriff of Johnson County, levied the execution on certain real estate belonging to Pack and conducted an execution sale. It is not clear from the record before us who purchased the property at that sale or what the sale price was. In any event, the sale was not consummated, no money was collected on the execution, and no sheriff's deed was delivered at that time. Neither is it plain whether the execution was lodged with the Johnson Circuit Clerk as prescribed by KRS 426.110.

McKenzie learned at the sale that Pack had filed voluntary bankruptcy proceedings in the United States District Court for the Eastern District of Kentucky and presumed that he was without authority to proceed because of the bankruptcy action. It later developed that the trustee in bankruptcy disclaimed the property of Pack upon which the execution had been levied. Pack was granted a final discharge in bankruptcy on November 7, 1956.

As more fully appears in McKenzie v. Commonwealth, Ky., 373 S.W.2d 595, Willard Hicks, the original judgment creditor of Hurst W. Pack, sued McKenzie in the Floyd Circuit Court for McKenzie's failure as sheriff to properly proceed with the execution, and as prescribed by KRS 426.350. As noted in the earlier opinion, McKenzie was adjudged liable to Hicks. The same opinion affirmed the judgment of the Floyd Circuit Court which directed that McKenzie should be subrogated to the rights of Hicks pursuant to KRS 426.380.

McKenzie satisfied the judgment obtained against him by Hicks, and the present proceeding is the result of his effort to recoup his loss and developed in the following series of transactions.

McKenzie obtained an alias execution from the Floyd Circuit Court which was delivered to the then sheriff of Johnson County and levied by him on Lots 74, 75, 76, and 77 of Blair and Hall Addition to West Van Lear and Lots 210, 211, 212, 213, 214, 215, and 216 of the Messer Subdivision of West Van Lear and two gas wells and certain appurtenances located at Flat Gap. On March 2, 1964, the then sheriff of Johnson County sold the real estate at a sheriff's sale at which time the appellee McKenzie became the purchaser thereof. The sheriff made a deed to McKenzie conveying the property levied on.

It appears that on September 6, 1941, Hurst W. Pack, then a single man, executed a deed to his sister, the appellant Juana Teegarden, reciting a consideration of "one dollar and other good and valuable consideration" by which he conveyed to her Lots 76 and 77 of the Blair and Hall Addition to the town of Van Lear. That deed was duly recorded in the office of the clerk of the Johnson County Court. On August 11, 1950, a deed was delivered from Grant Hitchcock and wife to Hurst W. Pack and Ruth Pack, his wife, reciting as consideration the release of Hurst W. Pack from certain liabilities slightly in excess of $500 by which Lots 210 through 216, inclusive, of the Messer Subdivision were conveyed. On its face, the deed refutes the idea that Ruth Pack furnished any consideration for it.

On January 6, 1954, the same date upon which the original execution against Pack

was placed in the hands of McKenzie, then sheriff of Johnson County, Hurst W. Pack delivered two deeds to appellant Ruth Pack, his wife, by one of which he conveyed to her all of his interest in Lots 210 through 216 of the Messer Subdivision and by the other of which he conveyed all of his interest in two gas wells and certain equipment used in connection with them.

Despite the fact that Pack had already caused to be recorded a deed to his sister, Juana Teegarden, for Lots 76 and 77 of the Blair and Hall Addition, he executed a mortgage on that same property to the First National Bank of Paintsville on October 30, 1950, purporting to secure an indebtedness of $1200. Moreover, by instrument dated September 5, 1949, Hurst Pack purportedly mortgaged the same two lots, together with the house situated on them, to his sister, Juana Teegarden, ostensibly to secure the payment of $3,000 owing to her by him and completely ignoring the fact that he had already deeded her the fee simple title to the same property. It is significant that Mrs. Teegarden asserted that she bought the property from her brother for $3,000, but she was unable to produce any canceled check or other receipt reflecting that she paid him that or any other sum.

By deed dated November 4, 1961, recorded February 5, 1962, Hurst W. Pack and Ruth Pack purported to convey to Juana Teegarden Lots 210 through 216 of the Messer Subdivision, showing as the source of title the original conveyance to them from Grant Hitchcock and ignoring the recorded conveyance to Ruth Pack of Hurst Pack's interest in the lots.

The appellants have presented a statement of five questions on this appeal, the substance of which may be condensed as follows: (1) The execution lien created by reason of the execution issued in 1954 ceased to exist because it left the hands of the sheriff to whom it was issued; (2) the discharge in bankruptcy of the execution debtor had the effect of destroying any

lien to secure the extinguished debt; and (3) the sheriff had no authority to convey the full title to the Messer Subdivision lots, since his levy was on an undivided half interest therein.

■ It will be observed that judgment creditor Pack had divested himself of record title to substantially all of the property involved prior to the levy of the execution. It has long been established that a judgment creditor may ignore fraudulent conveyances and cause the execution to be levied on lands as the lands of the judgment debtor without awaiting suit to cancel the fraudulent deeds. See Scott's v. Scott Ex'x, 85 Ky. 385, 9 K.L.R. 363, 3 S.W. 598, 5 S.W. 423; Daniel v. McHenry, 4 Bush. 277; Fuller v. Pinson, 98 Ky. 441, 17 K.L.R. 1002, 33 S.W. 399.

The deed whereby title to one-half the Messer Subdivision lots was placed in the name of appellant Ruth Pack was found by the trial court to have been fraudulent as to Hurst Pack's creditor, and the finding is abundantly supported by the evidence. Ruth Pack had conveyed all of her interest in the lots to Juana Teegarden. The trial court found from ample evidence that the efforts to place the title of these lots in the name of Mrs. Pack and Mrs. Teegarden were fraudulent. Inasmuch as neither of these appellants has any legal claim to any portion of the title to these lots, they have no standing to complain as to the quality of the title acquired by the appellee.

■ It is true that the discharge in bankruptcy extinguished the personal liability of Pack as respects the debts which were extinguished by that proceeding. However, the bankruptcy court, by its disclaimer of the real estate, effectively left that where it was and subject to the processes of the state court as more fully discussed in McKenzie v. Commonwealth, Ky., 373 S.W.2d 595, at 599–600.

■ Through voluminous pleadings, depositions, and exhibits the parties compiled a

confusing and intricate record upon which the trial court rendered its judgment finding that the various conveyances by Hurst Pack to his sister and to his wife, as well as the acquisition of an undivided half interest in the Messer Subdivision lots by Ruth Pack, were all fraudulently accomplished with the specific intention on the part of the grantor as well as grantees to defraud the creditors of Hurst W. Pack.

Without undertaking a more detailed recital, it is enough to remark that our examination of the entire record convinces us that the trial court had before it abundant substantive evidence sustaining the factual findings of the court as to these fraudulent transactions.

■ In McKenzie v. Commonwealth, Ky., 373 S.W.2d 595, 600, it was written:

"Under the provisions of KRS 426.120 there was a lien created upon the property of the execution debtor at the time the execution was issued by the clerk and this lien continued so long as the execution remained alive ʼı the hands of the sheriff."

Parenthetical citation of supporting authority for that statement was Webster v. Industrial Acceptance Corp., 234 Ky. 613, 28 S.W.2d 959. The appellants would read that portion of the opinion out of context and conclude from it that it was a statement of this court that the lien created by the execution ceased when the execution left the hands of the sheriff. That is not the import of the opinion, nor is it the law applicable to the facts of the present case. In the Webster case, the sheriff returned the execution with the endorsement "no property found." This court construed the Webster opinion in Fannin's Ex'r v. Haney, 283 Ky. 68, 140 S.W.2d 630, and pointed out that the lien of an execution is not lost or released once the execution has been levied, even though the sheriff does not proceed with a sale and even though the sheriff returns the execution to its office of origin. The court, in discussing the Webster decision and a federal court decision, observed:

"But as we understand those cases they hold in effect that if an execution is returned 'no property found' or without an actual valid levy upon the property, the lien created by issuing the execution and placing it in the hands of an officer is released." 140 S.W.2d 632.

■ In the present case the original execution was validly levied, and the record reflects that a sale was had but not consummated. It is our conclusion that in these circumstances the lien of the execution was not terminated or released, especially as to fraudulent attempts by the judgment debtor and his wife and sister to defeat the ·judgment creditor by sham conveyances made without consideration, in full knowledge of the plan to defeat the collection of the judgment debt and without ostensible or other change of possession. We do not have a situation in which the rights of an innocent purchaser for value are concerned, and what we hold here is not to be considered as applying in such a situation when and if it may arise.

To summarize, it is our view that a valid lien, inuring to the benefit of appellee McKenzie, pursuant to the subrogation rights afforded him by statute and vouchsafed to him in the original judgment, remained extant from the date of the original execution from the Floyd Circuit Court until it was merged in the title conveyed in satisfaction of that lien by the sheriff's deed to McKenzie pursuant to the levy. No legal or equitable considerations exist suggesting or impelling any rights in the premises in favor of either of the appellants in the particular circumstances of these devious and strenuous efforts to evade payment of a legally created debt.

The judgment is affirmed.

All concur.