Judge Owsley
delivered the judgment of the court.
This is an appeal from a judgment rendered against Em-bry, in an action of detinue brought by him to recover from Millar several slaves.
Embry asserted bis right to the slaves through Randolph Sims, and for the purpose of shewing Sims’ title, offered to prove, by parol evidence, the contents of a bill of sale, alledged to have been given to him by a certain Matthew Sims, who is admitted to have been formerly the proprietor pf (he slaves; but as the execution of the bill of sale w'as not admitted, although its absence may have been sufficiently accounted for, the court no doubt properly refused to permit parol evidence of its contents to go to the jury. Embry, moreover, for the purpose of manifesting Randolph Sims’ right to the slaves, introduced as evidence, the transcript of the proceedings and judgment rendered in his favor, in an action of detinue brought for the same slaves since the ’death of Matthew Sims, by his administrators, appointed by the county court of Madison ; but upon its being proven-that Matthew Siins died intestate in the Spanish dominions, and his being domiciled iji that country at the time of his decease, and upon its being also proven that the slaves in contest yVere brought to this country since his death, (he court below refused to allow the transcript to be used before the jury,
Whether, therefore, the transcript should have been used as evidence, is the principal question involved in the deter-hsination of the present case.
As the judgment purports to have been rendered upon the trial of the general issue, Randolph Sims, in whose favor it *301 wa* pronounced, might, no doubt, use it in bar to any other action which might be brought to recover the slaves, by the administrators; and if the administration was regularly granted, as in that case the administrators would be entitled to the possession of the intestate’s slaves, the judgment, as it concludes them, must, of necessity, imply an absence of right in their intestate, and hence, in any other contest, between the parties to that judgment, involving the right to the slaves at the intestate’s death, the judgment would not only be admissible, but conclusive evidence. And if conclusive against the administrators, as the heirs of the intestate could not regularly gain the possession of the slaves without their assent, it follows, that if the heirs should become possessed, they ought not to occupy more favorable ground, and consequently in an action ugainst them for the slaves, either by the defendant to the action brought by the administrators, or any person claiming under him, the judgment should be received as evidence,
But as it is in consequence of the administrators being entitled to the possession of the intestate’s slaves, that the judgment against them implies an absence of right in their intestate, it follows that, if owing to any irregularity in the county court’s granting the administration, the persons named as administrators gained no right to the possession, the judgment, as it in that case must have been rendered against those having no right to demand the estate of the intestate, cannot conduce, in the slightest degree, either to prove Randolph Sims, in whose favor it w’as entered, or Embry, hi§ alienee, is entitled to the slaves.
Whether, therefore, the court decided correctly or not in rejecting the tranpcript of the proceedings and judgment, turns exclusively upon the regularity of the order of the county court in granting the administration.
In making this enquiry, we shall assume the fact to have been proven,' that the intestate neither resided, nor had any property in this country at the time of his decease, and examine whether, upon the slaves being brought into the county of Madison, that court w'as authorised to grant the administration.
According to the act of 1797, (1 Lit. 618,) it is clear that no other county court can grant administration upon the estate of an intestate than such as might have taken probate of his will, had one been made, so that in deciding lijton the present case it becomes material to look into the *302 tenth section of the act cited, (1 Lit. 613,)-for the purpose of-ascertaining the jurisdiction of county courts in testamentary matters.
The sue-cession to per-sonai proper, tv i no msttfif where being) pursues the laws of where °a'"⅛-cedent was dormciled & -rert/ is gov-emed by the *aws ot tl,c where the propertymay bs-
*302 That section, after declaring that “the several county courts shall have power to hear and determine all causes, matters, suits and controversies testamentary, arising within their respective jurisdictions,” provides “that they shall examine and take the proof of wills, and grant certificates thereof, according to the methods and rules following, that is to say; if any testator shall have a mansion house, or known place of residence, his will shall be proven in the court of the county wherein such mansion house or place of residence is; if he has no such place of residence, and lands be devised iu the will, it shall be proved in the county where the lands lie, or in one of them, where there shall be land in several counties; and if he has no such place of residence, and there be no lands devised, then the will may be proved either in the court of the county where the testator shall die, or that wherein his estate, or the greater part thereof, shall-bey
As the provision in the'section just cited in relation to land, can have no bearing upon the question of administration; and as the intestate, Sims, is shewn to have died in the Spanish dominions where he is proven to have resided, it follows that if the county court of Madison possessed a power to grant the administration, it must have derived it from that provision which authorises the court of the county, wherein the estate, or the greater part thereof, shall be, to fake the probate of a will.
The circumstance of the intestate being, at the time of his decease, domiciled in the dominions of Spain, abstracted from every other consideration, cannot have made it irregular for the county court to grant the administration.
The succession to his personal estate should no doubt be regulated by the laws of the country where Sims died, but y0 recovel- any part thereof, which mav have been in this «/ i - > • country at that time, as the remedy must be governed by the laws here, there should, most clearly, as was decided in ⅛6 supreme court of the United States, in the cases of Fenwick against Sears, 1 Cranch, 259, and in the case of Dixon against Ramsey, 3 Cranch, 319, be administration obtained from the proper court in this country.
The latter of these cases was brought by an executor in the district oí Columbia; upon letters testamentary grant *303 ed in a foreign Country, and although the principle is there admitted, that the succession to the testator’s personal estate is to be governed by the laws of the country where he died, yet upon the principle of the remedy being regulated by the laws of the place where the suit is brought, it was held that the action could not be maintained.
c¡i»din a f> reign coun-but has p!'rfyna¡lerej administra- ’ sMl be fhe court of the county where the ur°pertymay beatthetime 0f his death.
As from the authorities in Cranch, therefore, it is proper (to enable the executor to recover the possession of the testator’s estate in certain cases, although he may have been domiciled abroad,) to obtain probate of his will where suit is brought. In giving an exposition to the act of this country, conferring jurisdiction in testamentary matters, we should, unless restrained by a different import, so to interpret it, as to enable the eourts of this country to take the probate in those cases, as wéll as when the testator may have resided here.
In deciding upon the section alluded to, then, as it contains no expressions calculated to restrain the taking of probate, to those cases where the testator may either die or reside in this country, but has used language sufficiently comprehensive to embrace the case of those residing beyond the limits of the country also, .we can have no hesitation in rejecting that construction which would restrain the taking of probate in the former cases in exclusion of the latter.
Notwithstanding, however, probate may be taken of the wills of persons domiciled in other countries, the enquiry arises, whether or not, to enable the court to do so, the estate of the intestate should not be within this country at the time of his decease?
The section of the act already recited, as we have seen, directs the will to be proven in the court of the county where the estate, or the greater part thereof; shall be, so tliata decision of the question just put, turns upon the ther enquiry, whether or not those expressions should be construed to relate to the county where the estate may be at the decease of the testator, or to the county where may be at the taking of the probate.
Viewing the whole section together, we have but little hesitation in adopting the construction which relates to the former, in exclusion to the latter county. This construe- .• . , , ... , , . tton not only accords with what we suppose the most obvious meaning of the legislature, but a different construction would involve the absurd consequence of permiting the jurisdiction in such cases to be exercised by the court of *304 any county io which the estate might either by accident (if design be conveyed. ,
Where the properly of a decedent is wholly in a foreign country, and some of it is bro’t to. this, after his death, no administration can be granted here, but the ad-minístralo? app°1:^. “j country,1 may act here.
*304 That the construction we have adopted is correct, will be the more obvious from a slight attention to the laws of England, in relation to the probate of wills made in foreign countries. Not that we would be understood as deducing from those laws any testamentary jurisdiction in the courts of this country, but vi e would resort to them for the purpose of ascertaining, by aknowledge ofthem,the most probable intention of the legislature in their enactment upon the subject.
Thus it is Said, that if a will be made in a foreign country, disposing of goods in England, it must be proved where the goods are: Toller’s Law of Ex’ors, 72; 11 Viner’s Abri. 58; but if the goods were all abroad, and the will be proven according to the custom of the country where the testator died, it is sufficient: Toller 72. And to a suit brought by the administrator in England for an account of the decedent’s estate, it is moreover said, that the executor may plead such matter in bar: 1 Vernon, 397.
These authorities, whilst they are in accordance with the cases from Cranch, shew the necessity of proving the will in the country where the estate of the testator may be at the time of his death, they also demonstrate, that, according to the doctrine of the English law, no probate is necessary to be obtained, from the courts of that country, where the estate is not within the kingdom at the testator’s death; and hence we apprehend, according to the law of that country, the executor may recover upon a probate taken in a foreign country, property which is brought to the country after the death of his testator.
&nd if so, when the legislature of this country was about to create testamentary jurisdiction, as they had previously adopted the laws of England, it was clearly unnecessary to provide for the taking of probate when the estate of those domiciled in other countries should not, at their death, be within this country.
And hence, as it was unnecessary in such cases for probate to be obtained in this country, the section in question, especially as it imports a different meaning, ought not to be construed so as to allow the courts here to exercise cognizance upon the property being brought to the country after the death of the testator.
And if in such a ease the will cannot be proven by the *305 ■tourts oí this country, it follows that as the slaves of Sims were brought to the county of Madison after his decease, that court ought not to have granted the administration, and being granted without competent authority, the court below did right in refusing to permit it to be used before the jury. The JÉBgment must be affirmed with cost.
Hardin and Wickliffe for appellant, Pope for appellee.