# Hood v. Pope et al.

(Decided February 25, 1930.)

J. B. SNYDER for appellant.

CHARLES B. SPICER for appellees.

OPINION OF THE COURT BY JUDGE LOGAN—Affirming.

One Cawood was indebted to Sid Lewis in the sum of $4,000, evidenced by his promissory note. Lewis obtained judgment. Cawood executed a replevin bond which was not satisfied. Lewis, through his attorney, caused an execution to issue, which was placed in the hands of the sheriff on December 1, 1928. On December 12th the sheriff levied upon a stock of goods belonging to Cawood, and advertised it for sale. It was sold later in December, when the appellant, J. W. Hood, became the purchaser at the price of $2,300. The money was paid to the sheriff by him, and he took possession of the goods.

The appellee Pope loaned Cawood $2,500 on December 7th, and Cawood executed a mortgage on the stock of goods to secure the payment of the note. Pope knew nothing of the execution then in the hands of the sheriff. His mortgage was placed on record immediately after he received it. There is a controversy as to what took place at the time of the sale. It is contended by some of the litigants that the sheriff explained that the sale was made

subject to the mortgage of Pope, while others say that the sheriff explained at the time of the sale that the goods would be sold free from the lien of the Pope mortgage, and that Pope would be satisfied out of the proceeds of the sale.

The debt of Pope was not satisfied out of the proceeds of the sale. Consequently, he instituted suit on January 4, 1929, against Hood, the purchaser of the stock of goods at the sheriff's sale, wherein he sought to enforce his lien against the goods in the possession of Hood. In answer to the petition filed by Pope Hood filed an answer and counterclaim and a cross-petition against the sheriff. In his answer he pleaded that the sheriff at the time of the sale announced that the stock of goods was sold free from liens, and that Pope would be satisfied out of the proceeds of the sale, and in his cross-petition against the sheriff he sought to have the $2,300 paid over to him. An order was made in vacation directing a sale of the stock of goods in the Pope suit. Hood purchased the stock of goods at that sale for $1,450. He paid cash at the time, with the understanding, as he alleged, that he would not be held responsible on both sales. About this time, Cawood having filed a petition in bankruptcy, his trustee filed an intervening petition, claiming the proceeds of the sales. Before the issues in the Pope suit were decided, the court directed the sheriff to refund to Hood the amount he paid at the second sale upon his executing a refunding bond. Upon final hearing, the circuit court held that both sales were valid, and that Hood should pay into court the $3,750 realized by the sales, less certain credits not material here. The judgment did not determine whether the trustee in bankruptcy or Pope was entitled to the proceeds of the sales.

Hood has appealed from that part of the judgment holding him responsible for the proceeds of the second sale. His first position is that the announcement of the sheriff that the stock of goods was sold free from lien was a protection to him, and that he acquired a clear title to the goods at the first sale. If that is not sound, he contends that the execution was placed in the hands of the sheriff on the 1st day of December, and the mortgage was not executed until the 7th day of December. Therefore the lien created by the execution was superior to the mortgage, and that he obtained a clear title to the goods when he purchased at the first sale.

It is true that two witnesses testified that the sheriff announced at the first sale that the purchaser of the

property would get a clear title. The sheriff, however, testified that he announced that the sale was made subject to the mortgage. Appellant relies on the case of Appleman v. Lynch National Bank, 221 Ky. 415, 298 S. W. 1097. That was a case involving a lien for street improvements. In making the sale, the master commissioner announced that the judgment made no provision about the liens for street improvements, and that he had nothing to do with the lien. Therefore he was selling the property subject to that lien. If the sheriff is correct in his testimony in this case that he simply announced that he would sell the property subject to the lien of Pope, it is obvious that the sale did not affect the Pope lien. The chancellor entered his judgment upon the theory that the first sale was subject to any lien that Pope may have had, and we will not disturb his finding on that point. An officer has control of the sale which he is making, and he has some discretion in the conduct of the sale, but he must exercise that discretion with due regard to the rights of the parties. The sheriff could not determine whether Pope had a lien. He had no authority to advise those present at the bidding that the Pope lien, would be paid out of the proceeds of the sale. His authority was found in the execution alone. It was proper that he should call attention to the mortgage, if knowledge of it had come to him. When Hood purchased the stock of goods, he knew that Pope was claiming a lien against the property. The mortgage was on record at the time, and there is no doubt that the sheriff called attention to the mortgage. The circumstances all tend to show that the sheriff is correct in his testimony to the effect that he advised bidders that the sale was subject to the Pope mortgage.

It is the general rule, in fact it is statutory law in this state, that an execution binds the estate of a defendant from the time of its delivery to the proper officer. Section 1660, Ky. Stats. The moment that an execution is placed in the hands of an officer for collection a lien is created for its payment on all of the property owned by the defendant in the execution which is not exempted by law. It has been held, however, that, if an execution is placed in the hands of an officer with instructions not to levy it until ordered, no lien is created on the property of the execution debtor while it is so held. Gray v. Patton, 13 Bush 625. Likewise it has been held that an order of attachment delivered to an officer with directions not to execute it creates no lien on the estate of the

defendant until the directions to stay its execution are removed. Blakely, Assignee, v. Smith, 26 S. W. 584, 16 Ky. Law Rep. 109.

The sheriff testified in this case that, when the execution was delivered to him by the attorney for Sid Lewis, he was directed to hold it until the attorney could look up something, and that he would let him know the property to be levied on, and that finally he came to him and told him he wanted the execution levied on the stock of goods. The sheriff stated that he did hold the execution in accordance with the instructions given to him until he received further instructions to make a levy, and that he made the levy on December 12th, which was the day that the instructions were given.

While it is true the execution was left with the sheriff on December 1st, it was established to the satisfaction of the chancellor that he was directed to hold it awaiting further instructions. If an execution is delivered by or on behalf of an execution creditor, with the directions to the officer to hold the execution until further instructions, it is not officially in the hands of the sheriff or officer whose duty it is to do execution. That appears to have been what happened here.

Before the execution was levied, or before the sheriff had directions to do execution thereof, the mortgage was executed to Pope. There is no suggestion of a lack of good faith on the part of Pope. The sheriff, after having made the levy, advertised the sale, and in his notice he stated that the sale would be made subject to the Pope mortgage. The chancellor's judgment is in accordance with the law as well as equity.

Judgment affirmed.