**In re JOHN GALT ENERGY, INC., Debtor.**

**Bankruptcy No. 183–31990–353.**

United States Bankruptcy Court, E.D. New York.

July 10, 1987.

---

Spilky & Spilky, Robert M. Spilky, Mineola, N.Y., and Wyatt, Tarrant & Combs, Debra H. Dawahare, Lexington, Ky., for Huscoal, Inc.

Vann & Borenstein, P.C., Avrom R. Vann, New York City, for Marty Corp.

Sherman, Citron & Karasik, P.C., Robert Kolodny, New York City, for debtor.

## DECISION

JEROME FELLER, Bankruptcy Judge.

Before the Court for resolution is a long raging dispute between and among two judgment creditors and John Galt Energy Corporation ("Galt" or "Debtor") relating to entitlement to a certain fund of money arising out of pre-petition litigation in the State of Kentucky. Galt filed its Chapter 11 petition in October 1983. In early 1985, this Court (per Honorable Cecilia H. Goetz, United States Bankruptcy Judge), upon motion of the Debtor, ordered a turnover by the Kentucky state court of the subject monies to the Debtor, pending ultimate determination of entitlement thereto by the bankruptcy court. The monies, originally aggregating $56,345, are currently being held in an interest bearing account by Debtor's counsel.

The parties were apparently in no great haste in bringing the matter before the bankruptcy court. Huscoal, Inc. ("Huscoal"), a judgment creditor, made a motion in July 1986 and the other judgment creditor, Marty Corporation ("Marty"), filed a cross-motion in December 1986, for an order determining priorities and ordering the disbursement of the funds held by Debtor's counsel. In February 1987, the Debtor

filed an "answering affirmation" to both motions.[1]

Post-judgment collection efforts employed by both Huscoal and Marty were numerous. Huscoal obtained two executions and two garnishments at various times prior to Galt's filing of its Chapter 11 petition. Marty obtained three garnishments at different times prior to the inception of the Chapter 11 case. The Debtor contends that all of these efforts by both Huscoal and Marty failed to establish valid liens under Kentucky law and that, in any event, one of the executions and certain of the garnishments were obtained within the ninety day preference period contained in 11 U.S.C. § 547 and avoidable under that section.

The dispute was first scheduled for hearing on March 10, 1987, at which time the parties sought to rely upon their papers for the facts and to argue their respective legal positions. The Court informed the parties that the papers were not comprehensible, the record was confounding and in disarray, and that accordingly the matter was not ripe for adjudication. The parties, as directed by the Court, subsequently filed an agreed stipulation of facts, a document styled "Pleadings Filed In Wolfe Circuit Court," a document styled "Kentucky Revised Statutes, Sections 425.190–426.990" and memoranda of law or briefs. In addition, Huscoal and Marty filed reply affirmations. The matter was heard on May 7, 1987 and taken under advisement.

## Jurisdiction

The bankruptcy court has jurisdiction over the parties and subject matter of the proceeding pursuant to 28 U.S.C. § 1334, 151, and 157, and the general order of reference entered by the United States District Court for the Eastern District of New York on August 28, 1986. This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(F), (K) and/or (O), which this Court may hear and determine.

## Findings of Fact

Based upon the stipulation of facts, motions, answering and reply affirmations, documents and the entire record of these proceedings, the Court makes the following findings of fact.

1. The saga begins with a lawsuit seeking recovery of monies for breach of a 1977 agreement involving a Kentucky coal tippling operation, filed by Parkway Processing, Inc. ("Parkway") on October 1, 1979 against Galt in the Wolfe Circuit Court, Wolfe County, Kentucky ("Wolfe Circuit Court"), in a case styled *Parkway Processing, Inc. v. John Galt Energy Corp.*, Civil Action No. 79–CI–066. On the same date, Parkway obtained from the Wolfe Circuit Court a pre-judgment order of attachment. Also on October 1, 1979 and in aid of the pre-judgment attachment, Parkway obtained an order of garnishment from the clerk of the Wolfe Circuit Court ("Wolfe Circuit Court Clerk"), naming as garnishees the Shenandoah Coal Company, Inc. ("Shenandoah") and Richard H. Combs ("Combs"). The garnishment order stated that the garnishees were holding property belonging to Galt, and that the total amount due under the garnishment order was $56,269.

2. On October 20, 1979, Shenandoah and Combs filed an "Answer of Garnishees," admitting possession of $56,345 due Galt and stating they are holding the said sum of money pending further order of the Wolfe Circuit Court. On motion of Parkway filed on or about April 3, 1980, the Wolfe Circuit Court, on April 10, 1980, ordered garnishees, Shenandoah and

---

1. The procedures invoked by the parties are technically incorrect. The motions of Huscoal and Marty are brought pursuant to 11 U.S.C. § 726 even though that provision is inapplicable to Chapter 11 cases. 11 U.S.C. § 103(b). Moreover, the relief sought by Huscoal and Marty should have been by way of adversary proceeding initiated by complaint. Bankruptcy Rule 7001. Similarly, the Debtor's assertions of voidable preferences also required the filing of a complaint in an adversary proceeding under Bankruptcy Rule 7001. Apart from noting these irregularities, this Court is not inclined to employ form or technical requisites as a barrier to resolution of the dispute, particularly in light of the time and effort already expended by the parties, the full opportunity of the parties to present their respective claims and the apparent agreement of the parties to proceed on this basis.

Combs, to pay the $56,345 to the Wolfe Circuit Court Clerk, pending the outcome of Parkway's lawsuit against Galt.

3. On April 21, 1980, Marty was granted a default judgment against John Galt Coal ("Galt Coal") in the sum of $163,757.72 arising out of a lawsuit on a promissory note instituted in the United States District Court for the Western District of Virginia (*Marty Corporation v. John Galt Coal Company, Inc.*), Civil Action No. 80–0048–B. One month later, Marty filed a certified copy of its judgment for registration in the United States District Court for the Eastern District of Kentucky, Lexington Division.

4. On June 19, 1980, Huscoal received an agreed judgment from the Wolfe Circuit Court in a case styled *Huscoal, Inc. v. John Galt Energy Corp.*, Civil Action No. 79–CI–057, an action to recover from Galt the purchase price of coal sold and delivered. The agreed judgment was in the sum of $18,590.89, plus interest at the rate of 8% per annum from the date of the agreed judgment until paid.

5. Huscoal was swift in its initial efforts to enforce its judgment against the $56,345 fund. On July 10, 1980, Huscoal obtained a writ of execution returnable by August 7, 1980, delivered the writ to the Wolfe County Sheriff's Office and on that date the deputy sheriff served the execution upon the Wolfe Circuit Court Clerk, making a notation on the back of the execution to that effect.[2] At that time, the Wolfe County Circuit Court Clerk was holding the $56,345 pending the outcome of the Parkway litigation against Galt. Huscoal's execution was, of course, subject to Parkway's prior pre-judgment attachment. The amount of Huscoal's execution was equal to its judgment, i.e., $18,590.89 plus interest and $100 for court costs.

6. On November 17, 1980, the Wolfe Circuit Court's findings of fact and judg-

ment were entered in Parkway's litigation against Galt. Judgment was entered in favor of Parkway in the amount of $165,000, which sum was later increased to $215,000. The Wolfe Circuit Court expressly sustained Parkway's pre-judgment attachment on the $56,345 fund, thus entitling Parkway to the monies in partial satisfaction of the judgment. The monies were turned over to Parkway on or about May 7, 1981 upon entry of an order by the Wolfe Circuit Court directing the Wolfe Circuit Court Clerk to pay the $56,345 to Parkway.

7. The turnover of the funds to Parkway hardly closed the matter for Galt had taken an appeal from the November 1980 judgment of the Wolfe Circuit Court. On February 12, 1982, the Kentucky Court of Appeals, in an unreported opinion, reversed the judgment of the lower court. The Kentucky Court of Appeals remanded the case back to the Wolfe Circuit Court, with directions to stay the proceedings therein and to submit the issues to arbitration by the American Arbitration Association in New York City, all in accordance with the 1977 agreement between Parkway and Galt. It should be emphasized that the decision of the Kentucky appellate court only held that an arbitration clause contained in the 1977 agreement is enforceable and made no rulings regarding entitlement to the $56,345, which fund was then held by Parkway.

8. The monies were not returned by Parkway to the Wolfe Circuit Court Clerk until on or about April 5, 1982, on which date the Wolfe Circuit Court entered an order directing the parties to proceed to arbitration and ordering Parkway to return the $56,345, with the express instruction that Parkway's pre-judgment attachment "shall remain on said funds in the custody of Clerk of this Court."[3]

2. The Wolfe Circuit Court docket entry, dated July 11, 1980, reads as follows—"EXECUTION ON JOHN GALT ESTATE, FILED SERVED ON JEAN T. SMITH, WOLFE CIRCUIT COURT CLERK."

3. The April 5, 1982 order of the Wolfe Circuit Court further provided that, "[t]he Clerk shall invest said funds in an interest bearing account, and said funds, together with any interest earned thereon shall be held by the Clerk until further order of this Court."

9. In March and April 1982, after reversal by the Kentucky Court of Appeals of the judgment in the Parkway lawsuit against Galt, Marty and Huscoal made efforts to garnish the $56,345 from Parkway.

10. On March 10, 1982, Marty obtained an order of garnishment from the Clerk of the United States District Court for the Eastern District of Kentucky, Lexington Division, based upon its April 1980 default judgment against Galt Coal. The garnishment order was served on March 11, 1982 and an "Answer of Garnishee" was filed on March 15, 1982, denying any indebtedness to Galt Coal or the holding of any property owned by Galt Coal.

11. On March 19, 1982, Marty obtained a second order of garnishment from the Clerk of the United States District Court for the Eastern District of Kentucky, Lexington Division, based upon its April 1980 default judgment against Galt Coal. This garnishment order was served on April 15, 1982 and an "Answer of Garnishee" was filed April 20, 1982, denying any indebtedness to Galt Coal or the holding of any property owned by Galt Coal.

12. On March 25, 1982, Huscoal obtained an order of garnishment from the Wolfe Circuit Court Clerk, based upon its June 1980 judgment against Galt. The garnishment was served on March 31, 1982 and an "Answer of Garnishee" was filed April 2, 1982, denying the holding of any property of Galt.

13. Ultimately, Galt prevailed in the arbitration mandated by the Kentucky Court of Appeals. On May 27, 1983, Galt obtained an award in the New York arbitration of the issues between Parkway and Galt. The arbitration award, among other things, resolved that Galt was entitled to the monies held by the Wolfe Circuit Court Clerk pursuant to Parkway's pre-judgment attachment.

14. On August 9, 1983, Galt obtained a judgment of the Supreme Court of the State of New York, County of Kings, confirming the arbitration award of May 27, 1983. On August 19, 1983, Galt caused to be filed a certified copy of aforesaid judgment with the Wolfe Circuit Court Clerk.

The Wolfe Circuit Court Clerk made no disposition of the $56,345, presumably in light of the still unresolved claims to the fund by Galt, Huscoal and Marty.

15. Meanwhile, as a result of the arbitration award in favor of Galt, Huscoal and Marty made further efforts to enforce their judgment in July, August and September 1983.

16. On July 29, 1983, Huscoal obtained a second execution and a second order of garnishment for its unsatisfied agreed judgment of June 1980. The execution and garnishment were served upon the Wolfe Circuit Court Clerk on July 29, 1983 and, like Huscoal's earlier execution and garnishment, were unavailing.

17. On August 30, 1983, Marty obtained a third order of garnishment based upon its April 1980 unsatisfied default judgment against Galt Coal. This garnishment was directed to the Wolfe Circuit Court Clerk. It was served on September 19, 1983 and, in response thereto, the Wolfe Circuit Court Clerk answered that "$56,345 plus interest subject to execution and order of garnishment previously filed" was in her possession.

18. By motion dated September 29, 1983, and set for hearing before the Wolfe Circuit Court on October 6, 1983, Huscoal requested the Wolfe Circuit Court to disburse to Huscoal its portion of the $56,345 in satisfaction of its judgment. Similar relief was sought by Marty. By motion filed September 30, 1983, and set for hearing on October 19, 1983, Marty requested the Wolfe Circuit Court to disburse the $56,345 in partial satisfaction of its much larger judgment. The Wolfe Circuit Court did not dispose of either of these motions.

19. On October 18, 1983, Galt filed a petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of New York. On the following day, an order implementing 11 U.S.C. § 362, staying all further proceedings against the Debtor, was filed in the Wolfe Circuit Court.

20. By application dated September 18, 1984, the Debtor requested Bankruptcy Judge Goetz to issue an order pursuant to 11 U.S.C. § 543 directing the Wolfe Circuit Court Clerk to turn the $56,345 fund over to the Debtor. Both Huscoal and Marty opposed vigorously the Debtor's turnover application. They contended, among other things, that, i) Galt, a New York Corporation, lacked the capacity to file a petition seeking Title 11 relief because the corporation was dissolved in 1981 by executive proclamation under New York law; and ii) pursuant to 28 U.S.C. § 1471(d) [now 28 U.S.C. § 1334(c)(1)], the bankruptcy court under the doctrine of *forum non conveniens* should abstain from hearing and determining the dispute relating to the $56,345 in favor of its adjudication by the Wolfe Circuit Court.

21. On January 18, 1985, Judge Goetz issued an unreported opinion rejecting the contentions of Huscoal and Marty and holding that the disputed funds should be turned over to the custody of the bankruptcy court, pending determination of entitlement to the subject fund by the bankruptcy court. On February 4, 1985, Judge Goetz entered an order directing the Wolfe Circuit Court Clerk to turnover to the Debtor the disputed monies. The Wolfe Circuit Court Clerk complied with the order and, as indicated, Debtor's counsel maintains the fund in a separate interest bearing account pending resolution of the instant litigation.

22. No motion was made to reconsider or vacate the February 4, 1985 order of Judge Goetz and/or the January 18, 1985 opinion upon which the order was based. No notice of appeal was taken from said order and opinion. Accordingly, that order and underlying opinion is a final order of this Court constituting the law of the case, insofar as the issues adjudicated therein.

23. By order entered September 25, 1985 of the Chief Bankruptcy Judge of the United States Bankruptcy Court for the Eastern District of New York, the Galt Chapter 11 case was transferred from Judge Goetz to the undersigned bankruptcy judge.

## DISCUSSION

Parsing through the convoluted peregrinations of the much sought after $56,345 and the many efforts of the parties to reach that fund over a protracted period of time, there are two central issues that are presented. Both issues are governed by Kentucky law and involve efforts by Huscoal and Marty to recover on their judgments prior to the 90 day preference period contained in 11 U.S.C. § 547. First, whether the execution obtained by Huscoal on July 10, 1980 created a valid and subsisting lien, and second, whether the garnishment obtained by Marty on March 10, 1982 constituted a valid lien. For the reasons hereinafter set forth, we hold that Huscoal's execution was valid and continues to this very date, while Marty's garnishment failed to establish a valid lien.

### A. *Huscoal's July 10, 1980 Execution*

Chapter 426 of the Kentucky Revised Statutes (hereinafter "KRS § ___") entitled "Enforcement of Judgments" governs executions on judgments in the State of Kentucky. Insofar as Huscoal's July 10, 1980 execution, the relevant statutes are KRS §§ 426.010, 426.120(1) and 426.040. These statutes, in pertinent part, provide as follows:

> "426.010. *Execution against property may issue on personal judgment.*—If a final judgment in personam is rendered in any court of record in this state for an ascertained sum of money, with interest and cost, or for either, an execution against property may issue thereon." [4] [Underscore of Section Title Added—Boldtype in Original].
>
> "426.120. *Defendant's estate bound by execution from receipt by officer....*

---

**4.** The earliest point of time an execution may issue is 10 days after rendition of the judgment. KRS § 426.030. After expiration of the 10 day period following rendition of the judgment, an execution may issue at any time until collection of the judgment is barred by the statute of limitations. KRS § 426.035. In Kentucky, the statute of limitations for money judgments is 15 years. KRS § 413.090.

—(1) An execution against property shall bind the estate of the defendant only from the time of its delivery to the proper officer to execute...." [Underscore of Section Title Added—Boldtype in Original].

"426.040. *Return of execution.*—(1) An execution against property by the levying officer shall be returnable to the court in which the action is pending within 30 days after levy but in no event more than 60 days after the execution is issued.... (2) If an execution against property is satisfied the officer shall return thereon, in substance, 'satisfied,' unless it be by the sale of property in which case this fact must be stated. If satisfied in part, he must state what part and why the residue was not satisfied. If levied and no sale was made for want of bidders, or if no property has been found, he must state the facts." [Underscore of Section Title Added—Boldtype in Original].

There can be no question that Huscoal's July 10, 1980 execution was long prior to Marty's garnishment efforts. As such, if such execution constitutes a valid lien, it is not difficult to conclude that Huscoal's claim to the disputed monies comes ahead of Marty in accordance with the familiar principle that first in point of time is first in priority. *Commercial Transport Corporation v. Robinson Grain Company,* 345 F.Supp. 342, 344 (W.D.Ky.1972); Note, *Creditors' Rights—Judgment Liens and Priorities in Kentucky,* 41 Ky.L.J. 464, 466 (1953).

The creation and perfection of an execution lien under Kentucky law involves a four-step process—i) issuance of an execution; ii) delivery of the order or writ to the proper official to execute; iii) a valid levy against property of the judgment debtor; and iv) making of an adequate return by the levying official. In Kentucky, the execution lien is created at the time the order or writ is placed in the hands of the appropriate official to execute. KRS § 426.-120(1) ("An execution against property shall bind the estate of the defendant only from the time of its delivery to the proper officer to execute."); *Wilkey v. Ohio Val-*

*ley National Bank of Henderson (In re Baird),* 55 B.R. 316, 317 (Bankr.W.D.Ky. 1985); *C.T.C. Inv. Co. v. Daniel Boone Coal Corporation,* 58 F.2d 305, 313 (E.D. Ky.1931); *Hood v. Pope,* 233 Ky. 749, 26 S.W.2d 1043, 1045 (1930); *Richart v. Goodpaster,* 116 Ky. 637, 76 S.W. 831 (1903); Note, *Creditors' Rights—Judgment Liens and Priorities in Kentucky, supra.,* 41 Ky.L.J. at 465. Perfection of the execution lien is attained when a valid levy is made against the property and the levying officer makes an adequate return of execution. *Wilkey v. Ohio Valley National Bank of Henderson, supra.,* 55 B.R. at 317–18; *Walker v. Bank of Cadiz & Trust Company (In re Wilson),* 38 B.R. 940, 942 (Bankr. W.D.Ky.1984); *W.E. Stephens Manufacturing Company v. H.C. Miller,* 429 S.W.2d 384 (Ky.1968); *Low v. Skaggs,* 31 Ky. 1292, 105 S.W. 439, 440 (1907).

Bearing in mind the requisites for creation and perfection of an execution lien in Kentucky, we turn now to whether Huscoal acquired a valid and subsisting lien under its July 10, 1980 execution. On June 19, 1980, Huscoal obtained a judgment against Galt for an ascertained sum of money upon which an execution could properly issue. Huscoal obtained issuance of the execution and delivered it on July 10, 1980 to a proper official, a Wolfe County deputy sheriff, to execute. Delivery of the writ of execution to the deputy sheriff created a lien in favor of Huscoal against property of Galt in Wolfe County. The deputy sheriff promptly performed his duty by levying upon the $56,345 fund on the same date of his receipt of the writ, July 10, 1980. On that date, the deputy sheriff effected the levy by serving the execution upon the Wolfe Circuit Court Clerk who was holding the monies subject to Parkway's earlier prejudgment attachment. The deputy sheriff, also on July 10, 1980, made his return of execution by indorsing his service upon the Wolfe Circuit Court Clerk on the writ of execution. On its face, the issuance of the execution, delivery of the execution to the deputy sheriff, levy and return of execution by the deputy sheriff, all on July 10, 1980, brings Huscoal within the requisites

of creation and perfection of an execution lien under Kentucky law. Accordingly, prima facie, Huscoal obtained a valid second lien on the $56,345 fund in possession of the Wolfe Circuit Court Clerk on July 10, 1980, and became entitled to the satisfaction of its judgment from that fund upon ultimate vitiation of Parkway's pre-judgment attachment as a result of the May 1983 arbitration award in favor of Galt finally resolving the litigation instituted by Parkway against Galt on October 1, 1979.

The Debtor interposes a number of challenges to Huscoal's July 10, 1980 execution lien.[5] The Debtor argues that a Kentucky execution has a life span of only 60 days and that there is nothing in the record to indicate that Huscoal's execution was returned within such time frame. It is asserted that since in Kentucky all executions are returnable within 30 days after levy, but in no event later than 60 days after issue, the execution issued on July 10, 1980 was good for only 60 days and lapsed on September 10, 1980.

■ These contentions are untenable as a matter of law and factually incorrect. KRS § 426.040(1), in effect, compels the proper official to whom the execution is delivered to levy not later than 60 days after issuance. The purpose of this provision "is to speed the process of execution and to ensure that levies are not made under the authority of stale writs of execution." *Wilkey v. Ohio Valley National Bank of Henderson, supra.*, 55 B.R. at 318. It is not the execution that expires after 60 days, but rather the authority to levy which lapses after expiration of the 60 day period. *See, Deskins v. Coleman,* 286 Ky. 624, 151 S.W.2d 751, 752 (1941). A lien of an execution is not lost or released once the execution has been validly levied. *Teegarden v. McKenzie,* 444 S.W.2d 892, 895 (Ky.1969).

■ As indicated above, the record does reflect that the Wolfe County deputy sheriff did indeed make a timely return of

execution by indorsing his service of the writ upon the Wolfe Circuit Court Clerk on July 10, 1980. We can only assume, therefore, that the thrust of the Debtor's 60 day expiration contention is in reality directed towards the validity of the deputy sheriff's levy. Although, at best, confusingly articulated, it would appear the Debtor espouses the view that because the deputy sheriff did not come into possession of the $56,345 within 60 days after issuance of the execution, there was no valid levy and therefore the execution lapsed on September 10, 1980. Such a view finds no basis in Kentucky law. It is clear that a levying officer is not required to reduce the property to actual possession in order to perfect an execution lien. So long as he exercises dominion or control, the levying officer may leave the property in the possession of another person and the person holding possession after the levy holds the property as a bailee of the officer. *C.T.C. Inv. Co. v. Daniel Boone Coal Corporation, supra,* 58 F.2d at 314–16; *W.E. Stephens Manufacturing Company v. Miller, supra,* 429 S.W.2d at 386; *McBurnie v. Overstreet,* 8 Ky. Rep. 300, 303 (1849); *Opinions of Attorney General of the State of Kentucky* 79–80. Clearly, service of the execution upon the Wolfe Circuit Clerk by the deputy sheriff evinced the requisite intent of exercising dominion or control by the levying officer to constitue a valid levy.

In sum, Debtor's 60 day expiration argument must fail in light of the valid levy and the return of execution made by the deputy sheriff on July 10, 1980.

■ The Debtor further contends that Huscoal's July 10, 1980 execution lien is invalid because the deputy sheriff did not indicate the outcome of the levy on his return of execution. Therefore, it is asserted, that there was no adequate return of execution under KRS § 426.040. This argument is also without merit. There is no Kentucky statute specifying the form or precise contents for an officer's report of

---

**5.** Marty's cross-motion, reply affirmation and memoranda of law do not challenge Husocal's July 10, 1980 lien. Inexplicably, those papers make no mention whatsoever to Huscoal's July

10, 1980 execution. At oral argument on May 7, 1987, Marty conceded that it does not contest the July 10, 1980 execution of Huscoal. Transcript at pp. 24, 34.

execution after levy. KRS § 426.040(2) sets forth only some general guidelines geared primarily towards the sale of property to satisfy an execution. The adequacy of return of an execution will therefore vary under the facts and circumstances of the particular levy. Here, at the time of levy, the $56,345 fund was held *in custodia legis* by the Wolfe Circuit Court Clerk subject to a prior pre-judgment attachment. In effect, the Wolfe Circuit Court Clerk was in possession of the property as a stakeholder pending the outcome of ongoing litigation. Disposition of the property could not be made until resolution of that litigation. Under such circumstances, the deputy sheriff's indorsement of service upon the Wolfe Circuit Court Clerk on the writ of execution was an adequate return of execution and completed the perfection of Huscoal's second lien on the $56,345 fund behind Parkway's pre-judgment attachment. The deputy sheriff was unable to report "satisfied" or "unsatisfied" in the familiar sense of those terms because of the pending litigation. He merely did the only thing he could do, report his service of the execution upon the stakeholder, thereby fulfilling the statutory requirements. *See, Scott's Ex'x v. Scott*, 85 Ky. 385, 3 S.W. 598, 600 (1887) ("If the return [of execution] as entered by the officer be of doubtful import, it should be construed to uphold the action."); *Adams v. Napier*, 334 S.W.2d 915, 917 (Ky.1960) ("[T]here is always a presumption that an officer [i.e., a levying sheriff] performed his duties properly.").

■ Finally, the Debtor postulates that even if the deputy sheriff made a proper levy and return of execution, Huscoal lost its July 10, 1980 execution lien upon relinquishment of the $56,345 fund to Parkway by the Wolfe Circuit Court Clerk in May 1981 as a result of the Wolfe Circuit Court judgment of November 1980 in favor of Parkway. The release of the funds, however, was temporary. In April 1982, after Galt successfully appealed to the Kentucky Court of Appeals and obtained a reversal,

Parkway returned the monies to the Wolfe Circuit Court Clerk pending arbitration. The Debtor cites no authority and our independent research has failed to uncover any basis for the proposition that transfer of possession of property subject to a valid lien *ipso facto* destroys that lien. Moreover, the legal effect of the reversal by an appellate court is to render the judgment of the lower court a nullity, just as if it never existed, and to restore positions to their *status quo ante* the lower court ruling. *A.G. Miller v. Powell*, 680. S.W.2d 128, 130 (Ky.1984); *Turner v. Ewald*, 295 Ky. 764, 174 S.W.2d 431, 436–37 (1943); *Drury v. Franke*, 247 Ky. 758, 57 S.W.2d 969, 972 (1933); *Knights Adm'r v. Illinois Cent. R. Co.*, 143 Ky. 418, 136 S.W. 874, 875 (1911). Accordingly, the monies were transfered back to the Wolfe Circuit Court Clerk subject, first to Parkway's pre-judgement attachment and, secondly to Huscoal's July 10, 1980 lien. As shown above, upon final determination that the monies were the property of Galt and not Parkway, Huscoal became entitled to the fund under its July 10, 1980 lien. That lien is valid, continuing and extant to this very date and immune from attack by the Debtor under 11 U.S.C. § 547.

■ Huscoal's judgment was in the sum of $18,590.89 plus 8% interest from the date of the judgment. The disputed monies, originally aggregating $56,345, maintained now in an interest bearing escrow account by Debtor's counsel are more than sufficient to satisfy in full Huscoal's judgment plus interest and costs.[6] However, when Huscoal obtained its judgment on June 19, 1980, the Wolfe Circuit Court awarded post-judgment interest at what was then the statutory rate of interest on judgments, i.e., 8% per annum. KRS § 360.040, the Kentucky statute governing the interest on judgments, was amended, effective July 15, 1982, to increase the rate of interest on judgments from 8% to 12%. Under Kentucky law, a statutory increase in the rate of interest on judgments applies

---

**6.** In light of the decision herein and full satisfaction of Huscoal's judgment by virtue of its July 10, 1980 lien, issues pertaining to Huscoal's March 25, 1982 garnishment, July 29, 1983 execution and July 29, 1983 garnishment need not be addressed.

prospectively to prior unsatisfied judgments, and the new rate becomes operative as the effective date of the statutory amendment. *Ridge v. Ridge*, 572 S.W.2d 859 (Ky.1978). Huscoal is therefore entitled to an interest rate of 8% on its judgment from June 19, 1980 to July 15, 1982 and 12% from July 15, 1982 until the judgment is paid.

Having decided that Huscoal's is to be satisfied from the monies now held by Debtor's counsel, entitlement to the residuum of that fund is a contest between the Debtor and Marty. To resolve that dispute, we turn now to the issue as to whether Marty's March 10, 1982 garnishment constituted a valid lien.

B. *Marty's March 10, 1982 Garnishment*

■ The term "garnishment" denotes a proceeding by a creditor to obtain satisfaction of indebtedness out of property or credits of its debtor in the possession of, or owing by, a third person. 6 Am.Jur.2d *Attachment and Garnishment* § 2 (1963).

Marty obtained a Virginia district court judgment in April 1980 and registered a certified copy of that judgment in the Kentucky district court for the purpose of enforcement. *See*, 28 U.S.C. § 1963. Enforcement of the judgment by Marty through the Kentucky district court is governed by applicable state law, i.e., the laws of Kentucky. Fed.R.Civ.P. 69; *Moore's Federal Practice* ¶ 69.03[2] at 12–13 (2d ed. 1986). Unlike Huscoal, Marty never obtained an execution but proceeded by way of garnishment in its efforts to enforce its judgment. On March 10, 1982, Marty obtained a garnishment from the Kentucky district court and on the following day the United States Marshal served the garnishment upon Parkway as garnishee.

KRS § 425.501 governs proceedings for obtaining an order of garnishment in the State of Kentucky and, in pertinent part, provides as follows:

"(1) Any person in whose favor a final judgment in personam has been entered in any court of record of this state may, upon filing of an affidavit by him or his agent or attorney in the office of the clerk of the court in which the judgment was entered, and in the same cause in which said judgment was obtained showing the date of the judgment and the amount due thereon, and that one or more named persons hold property belonging to, or are indebted to, the judgment debtor, obtain an order of garnishment to be served in accordance with the Rules of Civil Procedure

. . . .

(5) If the court finds that the garnishee was, at the time of service of the order upon him, possessed of any property of the judgment debtor, or was indebted to him, and the property or debt is not exempt from execution, the court shall order the property or the proceeds of the debt applied upon the judgment.

. . . .

(8) The order of garnishment shall be served in accordance with the Rules of Civil Procedure. It shall summon the garnishees to answer in the action in the manner and at the time required for an answer by the Rules of Civil Procedure, and to make due return thereof."

The garnishee has the right to present proof on the issue of the property allegedly held by him and/or the debt allegedly owed by him. *See*, KRS § 425.511(1). The garnishing creditor does not have an unconditional right to that property or debt until such proof has been submitted and an appropriate order entered thereon, unless there has been a default by the garnishee. *See*, KRS § 425.511(2).

■ Whether issuance and service of a garnishment order creates a lien on specific property in the hands of a garnishee is determined by the particular state's enabling statutes. 38 C.J.S. *Garnishment* § 181 (1943). Clearly, under the Kentucky statutory scheme, a garnishment order merely triggers a procedure whereby the creditor seeks to apply the debtor's non-exempt assets in satisfaction of an underlying judgment. By no stretch of the imagination does it establish a lien in the true

sense of that term. The Kentucky statutes contemplate, among other things, answer, proof and a finding by the court "that the garnishee was, at the time of the service of the order upon him, possessed of . . . property of the judgment debtor, or was indebted to him." KRS § 425.501(5). Basically, the right of the garnishing creditor created upon issuance and service of the garnishment order is inchoate or incomplete until a judgment or order is entered by the court.

Marty obtained a garnishment on March 10, 1982 and had it served the following day upon Parkway. At the time, Parkway was still vigorously disputing Galt's entitlement to the disputed $56,345 fund, claiming the monies rightfully belonged to it and not Galt. The February 1982 reversal of the Wolfe Circuit Court judgment in favor of Parkway did not determine entitlement to those funds, but left that determination to subsequent arbitration. Indeed, Parkway did not even return the monies in its possession to the Wolfe Circuit Court Clerk pending the arbitration until ordered to do so by the Wolfe Circuit Court on April 5, 1982. It should hardly be surprising to Marty that Parkway's answer of garnishee, filed March 15, 1982, flatly denied any indebtedness to Marty's judgment debtor or the holding of any property owned by Marty's judgment debtor.[7] Contrary to the assertions of Marty, Parkway's answer as garnishee was proper in view of its belief that it was entitled to the monies. Issue was thus joined but never adjudicated in the context of Marty's garnishment proceedings and accordingly, Marty never obtained a lien on the disputed funds. Short-

ly thereafter, Parkway returned possession of the monies to the Wolfe Circuit Court Clerk, pending arbitration of Parkway's action against Galt, thereby mooting Marty's garnishment proceedings. See, 30 Am. Jur.2d Executions § 777 (1967) ("[Garnishments and other] supplementary proceedings do not take the place of a civil action generally to determine disputed rights of the judgment debtor and the third party involved.").

Apparently unmindful of the relevant Kentucky statutes relating to garnishments, Marty insists with vigor that under Kentucky law the mere service of its garnishment order on March 11, 1982, when Parkway still had possession of the disputed monies, created a lien.[8] Apart from sheer emotion, Marty presents no real support in applicable Kentucky law for its proposition that mere service of process upon a garnishee creates a lien.[9] Marty relies primarily, if not solely, upon In re Fagan, 26 B.R. 212 (Bankr.W.D.Ky.1982), where the court stated that, "[U]nder Kentucky law the service of the summons upon the garnishee creates the garnishment lien." Id. at 215. The Fagan case, however, was decided in the context of a wage garnishment. KRS § 425.506(1), the Kentucky wage garnishment statute, provides:

"(1) An order of garnishment of earnings . . . shall create a lien on all nonexempt earnings earned during the pay period in which the order is served on the employer, and where the pay period is for a period of less than two (2) weeks, or where the employee has been paid in

---

7. As indicated above, Marty's lawsuit was against John Galt Coal Company, Inc. and its judgment was entered against that entity and not John Galt Energy Corporation, the Debtor herein. The Debtor contends therefore that Parkway's answer as garnishee was accurate and Marty's efforts to obtain a garnishment lien against property of Galt ineffective. On the other hand, Marty asserts that Galt Coal and Galt were one and the same entities. The Kentucky courts never resolved this thorny factual issue and the record herein is wholly inadequate for this Court to do so. Fortunately, we need not address the issue in light of our determination that Marty failed to obtain a lien under its March 10, 1982 garnishment because of other valid and cogent reasons.

8. Marty admits that its second garnishment order which was obtained on March 19, 1982, but served on April 15, 1982, when Parkway no longer had possession of the disputed monies, did not create a valid lien. Transcript of May 7, 1987 Hearing at pp. 19–20.

9. Marty cites KRS § 425.270 as support for its position. However, KRS § 425.270 deals with liens of attachment and not garnishments. In any event, KRS § 425.270 was repealed in 1976, some 6 years before service of Marty's garnishment upon Parkway.

advance for the pay period in which the order is served, also on all nonexempt earnings earned during the next succeeding pay period."

The Kentucky general garnishment statute, KRS § 425.501, contains no such comparable provision. It is plain that Marty's reliance on the *Fagan* case is misplaced. Marty has made a cardinal error of legal reasoning, to wit, taking judicial reasoning out of original context and applying it uncritically to a materially different context.

A garnishment issued and served under KRS § 425.501 is but a specie of restraining order initiating a process which may ultimately result in creation of a lien. That this is true, Marty did not have to go further than a reading of its own March 10, 1982 garnishment order. This form garnishment order itself indicates that its purpose is not to create a lien, but only to serve as a restraining order and to incept a procedure possibly leading to establishment of a lien. The March 10, 1982 garnishment order, as well as the other garnishment orders obtained by Marty, drafted in accordance with the Kentucky law, addresses the garnishee like this:

> "You are hereby Ordered to hold and safely keep all of the non-exempt property of the defendant necessary to satisfy the amounts due as shown above. The object of this Order is to restrain you from paying to the defendant, or to anyone for him, the non-exempt money, property or other evidence of debt in your possession belonging to him or in which he has any interest. You are hereby summoned to and required to do the following:
>
> (1) Answer as Garnishee under oath within twenty days from receipt of this Order by sending a copy of this Order with your Answer to the Court ..."

For all of the foregoing reasons, we find that Marty failed to establish a lien on the disputed fund by virtue of its March 10, 1982 garnishment.[10]

### CONCLUSION

To summarize: The disputed fund, originally aggregating $56,345,[11] is to be disbursed to Huscoal in full satisfaction of its June 19, 1980 judgment with interest at the rates set forth at p. 667, *supra*, plus costs awarded by the Wolfe Circuit Court, by virtue of its July 10, 1980 execution lien; the remainder of the fund after satisfaction of Huscoal's judgment is to be retained by the Debtor. Marty's March 10, 1982 garnishment did not give rise to a lien on the fund and it failed to otherwise establish any other cognizable right to these monies.

SETTLE ORDER, INCLUDING TOTAL AMOUNT TO BE DISBURSED, PRECISE SUMS TO BE ALLOCATED TO HUSCOAL AND THE DEBTOR, AND UNDERLYING CALCULATION OF DISBURSEMENT TO HUSCOAL.

---

**10.** Marty's pleadings and memoranda of law do not make mention of its third garnishment order which was obtained on August 30, 1983 as a basis for a claim to the monies. Nor at oral argument did Marty make reference to this garnishment. Presumably, Marty recognizes that even if this garnishment did create a lien, it would be avoidable by Galt under 11 U.S.C. § 547.

**11.** The precise sum of the disputed fund, including accrued interest, has not been disclosed.